[ECF No. 27]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| **MAYRA PABEY,**<br>*On behalf of herself and all others similarly situated,*<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**CAMPBELL SOUP COMPANY and SNYDER'S-LANCE INC.,**<br><br>**Defendants.** | **Civil No. 25-01988 (MJS)** |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon the unopposed motion, ECF No. 27, of Plaintiff Mayra Pabey ("Ms. Pabey") and sole opt-in Plaintiff, Tiffany Quantrell ("Ms. Quantrell") (collectively "Plaintiffs"), for approval of a proposed settlement agreement with Defendants The Campbell's Company and Synder's-Lance Inc. (collectively, "Defendants"), which would resolve claims for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. The Court decides this issue pursuant to the Parties' consent to U.S. Magistrate Judge Jurisdiction, ECF Nos. 30, 31, and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Rule 78.1(b). For the reasons that follow, the motion is granted.

## I. Factual Background

Ms. Pabey, a resident of Wisconsin, worked as a Production Supervisor for Defendants. ECF No. 1 at ¶¶ 16-17; ECF No. 8 at ¶ 17. She alleges that Defendants improperly classified her as an exempt employee under the FLSA and violated the FLSA when they failed to pay

her overtime as required for non-exempt employees. ECF No. 1 at ¶¶ 70, 78. She also alleges that Defendants violated Wisconsin's Wage Payment and Collection Laws, Wis. Stat. § 109.01 et seq., Wis. Stat. § 104.01 et seq., Wis. Stat. § 103.001 et seq., Wis. Admin. Code § DWD 274.01 et seq., and Wis. Admin. Code § DWD 272.001 et seq. ECF No. 1, ¶¶ 73–80.

Ms. Quantrell also worked for Defendants. She joined Ms. Pabey's putative class action and collective action Complaint as an opt-in plaintiff, alleging that she too was denied overtime pay due to alleged misclassification as an exempt employee.[1] See ECF No. 2 at 1.[2] She is the sole opt-in Plaintiff. ECF No. 2; ECF No. 27-1 at 1.

Defendants filed an answer denying all liability, ECF No. 8, and have consistently maintained that Plaintiffs were properly classified as exempt employees. Id. After several months of litigation and settlement negotiations, Ms. Pabey, Ms. Quantrell, and Defendants negotiated a proposed settlement agreement resolving all of Ms. Pabey and Ms. Quantrell's claims ("the Proposed Settlement"). ECF No. 27-3. Thereafter, Plaintiffs filed this unopposed motion seeking Court approval of the Proposed Settlement because it resolves claims under the FLSA. ECF No. 27.

Among other provisions, the Proposed Settlement provides Plaintiffs with designated funds to resolve their wage and hour claims, in addition to an express two-thousand-dollar payment for each Plaintiff in exchange for her general release of claims. ECF No. 27-3 at ¶ 1(a). The Proposed Settlement also contains a no-hire provision barring Plaintiffs from seeking

---

[1] The FLSA permits named plaintiffs to bring claims on behalf of others similarly situated in a "collective action" but does not allow joinder of additional plaintiffs without their express consent. 29 U.S.C. § 216(b). Plaintiffs who consent to join an FLSA collective action are considered "opt-in" plaintiffs. See generally Lundeen v. 10 W. Ferry St. Operations LLC, 156 F.4th 332, 338 (3d Cir. 2025) (explaining FLSA opt-in mechanism).

[2] The Court refers to page numbers in the ECF header of documents unless otherwise noted.

employment in the future with Defendants and a non-publicity provision, preventing the parties from discussing the contents of the Proposed Settlement with the press, on social media, or issuing press releases about it. Id. at ¶¶ 7, 11, 17. The Proposed Agreement also provides payment of $8,829.94 to Plaintiffs' Counsel, which consists of a thirty-percent award, plus $996.61 in costs. ECF No. 27-1 at 15; ECF No. 27-3 ¶ 1(a)(iii). It does not seek class certification for settlement purposes or seek to certify a collective under the FLSA. See ECF No. 27-3.

## II. Legal Standard and Analysis

### a. FLSA Settlement Approval

District Courts in the Third Circuit generally require parties to obtain Court approval of settlements resolving FLSA claims, "[a]lthough the Third Circuit has not addressed whether [FLSA] actions claiming unpaid wages may be settled privately without first obtaining court approval[.]" Orozco v. Eli Timberland Tree Serv. LLC, No. 2:24-cv-7045, 2025 WL 2304894, at *1 (D.N.J. Aug. 11, 2025) (quoting Bettger v. Crossmark, Inc., No. 1:13–CV–2030, 2015 WL 279754, at *3 (M.D. Pa. Jan. 22, 2015)) (collecting cases) (modification in original). But see, e.g., Walker v. Marathon Petroleum Corp., 684 F. Supp. 3d 408, 412 (W.D. Pa. 2023) ("nothing in the text of the FLSA (or in any Third Circuit case) [ ] requires or even authorizes court approval for private-party FLSA settlement agreements.").

When evaluating a proposed FLSA settlement, the Court conducts a three-part analysis: "First, the court must determine that the settlement concerns a bona fide dispute. Second, the court must determine that the settlement is fair and reasonable to the Plaintiff-employee. And, third, the court must determine that the agreement does not frustrate the implementation of the FLSA in the workplace." Payton-Fernandez v. Burlington Stores, Inc., No. 22-608, 2024 WL

5202421, at *4 (D.N.J. Dec. 23, 2024) (citing Gabrielyan v. S.O. Rose Apartments LLC, No. 15-cv-1771, 2015 WL 5853924, at *2 (D.N.J. Oct. 5, 2015)).

**i. Bona Fide Dispute**

"A disagreement [ ] over hours worked or compensation due clearly establishes a bona fide dispute." Joseph's v. Caesar's Ent. Corp., No. 10-6293, 2012 WL 12898816, at *2 (D.N.J. July 23, 2012) (internal quotations omitted) (modification in original). "In essence, for a bona fide dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented." Payton-Fernandez, 2024 WL 5202421, at *4 (quoting Kraus v. PA Fit II, LLC, 155 F. Supp. 3d 516, 530 (E.D. Pa. 2016)); Joseph's, 2012 WL 12898816, at *2 (quoting Bredbenner v. Liberty Travel, Inc., Nos. 09–905, 09–1248, 09–4587, 2011 WL 1344745, at *18 (D.N.J. April 8, 2011)) ("'aggressive prosecution and strenuous defense demonstrates the palpable bona fides of [the] dispute.'") (modification in original).

The Proposed Settlement resolves a bona fide dispute for several reasons. It resolves a disagreement over the amount of compensation due. ECF No. 27-1 at 4. Further, Defendants rejected the claims presented. Id. at 2-3; ECF No. 8. Indeed, the parties engaged in strenuous prosecution and defense, including substantial written discovery requests. ECF No. 27-1 at 2. The proposed settlement would resolve all of Plaintiffs' claims. ECF No. 27-3 at ¶ 20. Accordingly, the Court finds the proposed settlement resolves a bona fide dispute.

**ii. Fairness and Reasonableness**

Next, the Court assesses whether the Proposed Settlement is fair and reasonable to the Plaintiffs. See Payton-Fernandez, 2024 WL 5202421, at *4 (citing Gabrielyan, 2015 WL 5853924, at *2). Here, there are two Plaintiffs: Ms. Pabey, who filed the Complaint on behalf

of herself and others "similarly situated", ECF No. 1, and Ms. Quantrell, who joined the Complaint as an opt-in plaintiff pursuant to 29 U.S.C. 216(b), ECF No. 2.[3] "[D]istrict courts in this Circuit have utilized the *Girsh* factors established for approving Rule 23 class action settlements" to assess the fairness of a private FLSA settlement which seeks to resolve a putative collective action. See Chen v. Ron Hibachi Grill Supreme Buffet Inc., No. 23-2591, 2024 WL 4906033, at *2, 4 (D.N.J. Nov. 27, 2024) (quoting Brumley v. Camin Cargo Control, Inc., No. 08-1798, 2012 WL 1019337, at *4 (D.N.J. Mar. 26, 2012)). Those factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Payton-Fernandez, 2024 WL 5202421, at *5 (quoting Brumley, 2012 WL 1019337, at *4–5) (internal quotations omitted). In this context, however, the Girsh factors are a guide, rather than a firm requirement. See Chen, 2024 WL 4906033, at *4 (quoting Kraus, 155 F. Supp. 3d at 523-24 n.3) ("[e]ven though *Girsh* may suggest the type of factors to be considered in assessing a private FLSA settlement, courts need not fall into the alluring trap of mechanically applying *Girsh*[.]").

Here, the Girsh factors broadly support a finding of reasonableness. Both Plaintiffs support the Proposed Settlement. ECF No. 27-3 at 17–18. Both Plaintiffs face risk in maintaining their claims and establishing damages, as Defendants argue the statute of limitations bars one Plaintiff's claims and that the other Plaintiff falls under the FLSA

[3] Pursuant to the FLSA, plaintiffs can file claims on behalf of others similarly situated but cannot join any similarly situated individuals to a lawsuit without their express consent. 29 U.S.C. § 216(b); Lundeen, 156 F.4th at 338; see Halle v. W. Penn Allegheny Health Sys. Inc., 842 F.3d 215, 226 (3d Cir. 2016) (generally discussing procedure for FLSA collective action certification).

executive exemption. ECF No. 27-1 at 5. Additionally, the wage and hour settlement encompassed in the Proposed Settlement represents approximately 59% of the potential owed back wages for the FLSA two-year statutory period, should Plaintiffs be successful on the merits. Id. at 6–7. On balance, the Proposed Settlement is reasonable.

### iii. Conformity with the Purposes of the FLSA

To approve the Proposed Settlement, the Court must also find that it does not frustrate the implementation of the FLSA in the workplace. See Payton-Fernandez, 2024 WL 5202421, at *4 (citing Gabrielyan, 2015 WL 5853924, at *2). The general release, no-hire provision, and non-publicity provision each raise potential concerns. The Court addresses each in turn.

#### a. The General Release Provision

The Parties recognize that “district courts in this Circuit and elsewhere generally disfavor general releases in agreements settling FLSA claims.” ECF No. 27-1 at 7–8. Nevertheless, Plaintiffs argue that the general release in the Proposed Settlement is permissible because Defendants included an additional $2,000 payment separate and apart from the settlement of Plaintiff’s wage and hour claims.[4] ECF No. 27-1 at 8–10.

The Proposed Settlement’s release covers all claims “of any nature whatsoever whether asserted or unasserted, known or unknown” that arose prior to the date of the Proposed Settlement. ECF No. 27-3 at ¶ 7(b). Courts routinely reject similar release provisions. See, e.g., Hudson v. Express Transfer & Trucking, No. 1:20-cv-05771, 2021 WL 406450, at *3, 5 (D.N.J. Feb. 5, 2021); Kraus, 155 F. Supp. 3d at 532–33.

[4] Plaintiffs also raise five other bases on which they seek to justify the general release, which the Court has considered.

However, courts permit general releases in FLSA settlements where the plaintiffs received additional consideration in the settlement. See Tenemaza v. Newark Fire Sprinkler Corp., No. 24-1155, 2025 WL 2930399, ¶ 11 (D.N.J. Sept. 22, 2025) (allowing general release where the release was mutual and plaintiffs were compensated for their release of claims); Garcia v. Missing Sock Laundry Serv. LLC, No. 24-8045, 2025 WL 1747062, at *3 (D.N.J. June 24, 2025) (allowing release where 10% of each individual payment to plaintiffs was consideration exchanged for a general release); Patel v. Spirits, Inc, No. 18-13405, 2020 WL 13828990, at *2 (D.N.J. Mar. 31, 2020) (allowing general release in exchange for defendants' agreement to release their counterclaim); Berardi v. Mkt. Basket, Inc., No. 17-4711, 2019 WL 13256740, at *1–2 (D.N.J. June 3, 2019) (allowing general release where defendant agreed to pay plaintiff an additional $2,000); see also Buntin v. Square Foot Mgmt. Co., LLC, No. 6:14-cv-1394, 2015 WL 3407866, at *2–3 (M.D. Fla. May 27, 2015) (allowing general release where release was mutual and defendants agreed to provide neutral job reference to plaintiff). The Proposed Settlement affords $2,000 payments to each Plaintiff, expressly in exchange for their general release, and Defendants also agree to provide Plaintiffs with neural job references. ECF No. 27-3 ¶¶ 1(a)(i)(C), 1(a)(ii)(C), 12. Accordingly, the Court finds the inclusion of a general release in the Proposed Settlement does not run counter to the purposes of the FLSA because it provides additional consideration to Plaintiffs. See, e.g., Berardi, 2019 WL 13256740, at *1–2; Buntin, 2015 WL 3407866, at *2–3.

**b. No Hire Provision**

The Court next evaluates whether the no-hire provision comports with the FLSA. ECF No. 27-3 ¶ 11. At least one District Court in this Circuit has permitted restrictions on future employment in FLSA settlements where the future impact on employment was "not substantial". Redden v. King's Corner Pub, LLC, No. 16-6152, 2017 WL 4883177, at *3, n.4 (E.D. Pa. Oct. 27,

2017); see also Lowery v. Auto Club Grp., Inc., No. 6:17-cv-359, 2017 WL 3336464, at *4 (M.D. Fla. Aug. 3, 2017), report and recommendation adopted, 2017 WL 3380465 (M.D. Fla. Aug. 4, 2017) (finding future employment waiver by former employee comported with the FLSA); Robertson v. Ther-Rx Corp., No. 2:09cv1010, 2011 WL 1810193, at *2 (M.D. Ala. May 12, 2011) (allowing future employment waiver where no plaintiffs desired future employment with defendant and future financial viability of defendant was precarious). Here, there is no indication that either Plaintiff desires to seek employment with either Defendant in the future. Accordingly, the no-hire provision, under the circumstances of this specific case, does not run afoul of the FLSA.

**c. Non-Publicity Provision**

Next, the Court considers the non-publicity provision, which prevents the parties from discussing the terms of the Proposed Settlement with the media, on social media, or through press releases. [5] ECF No. 27-3 ¶ 17.

Courts routinely strike confidentiality provisions as contrary to the FLSA. See Hudson, 2021 WL 406450, at *5 (discussing cases). However, Courts have permitted narrow confidentiality provisions with restrictions on publicity, because "[s]uch a prohibition does not 'thwart the informational objective of the [FLSA's] notice requirement by silencing the employee who has vindicated a disputed FLSA right.'" In re Chickie's & Pete's Wage & Hour Litig., No. 12-6820, 2014 WL 911718, at *3 (E.D. Pa. Mar. 7, 2014) (quoting Brumley, 2012 WL 1019337, at *7). The Proposed Settlement's confidentiality provision does not seek to seal the record or prohibit Plaintiffs from discussing this matter with anyone; it only prohibits Plaintiffs from disparaging

[5] This provision also contained a narrow confidentiality provision which required the parties to keep the terms confidential until the filing of Plaintiffs' Motion to Approve the FLSA Settlement. As Plaintiffs publicly filed the motion, including the Proposed Settlement, ECF Nos. 27, 27-3, this provision is moot and the Court need not address it.

Defendants or discussing the substance and negotiations of this matter with the press and media. ECF No. 27-3 ¶ 17. Such a prohibition does not "thwart the informational objective of the [FLSA's] notice requirement by silencing the employee who has vindicated a disputed FLSA right." In re Chickie's & Pete's, 2014 WL 911718, at *3 (quoting Brumley, 2012 WL 1019337, at *7); see Rogers v. Momeni, Inc., No. 20-6289, 2021 WL 3619740, at *2 (D.N.J. Aug. 13, 2021) (acknowledging publicity bar was not contrary to FLSA's purpose); Short v. Qyst Inc., No. 21-2730, 2022 WL 2109191, at *4 (E.D. Pa. June 10, 2022) (a provision that generally "prohibit[ed] the parties from making statements to the media, with the exception of noting an amicable resolution and directing the media to the public record" was not contrary to FLSA). Accordingly, the Court takes no issue with the non-publicity provision in the Proposed Settlement.

**d. Attorneys' Fees**

The Court must also review the reasonableness of the attorneys' fee award in the Proposed Settlement "to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." Orozco, 2025 WL 2304894, at *2 (quoting Hudson, 2021 WL 406450, at *2); Payton-Fernandez, 2024 WL 5202421, at *8 (citing 29 U.S.C. § 216(b)). Courts primarily consider the percentage of recovery method for fees, but also consider the lodestar calculation of attorney's fees. See Li v. Sushi To Go Cherry Hill, LLC, No. 22-4734, 2023 WL 4958105, at *5 (D.N.J. Aug. 3, 2023) (quoting Carroll v. Stettler, No. 10-2262, 2011 WL 5008361, at *8 (E.D. Pa. Oct. 19, 2011)).

The Proposed Settlement provides payment of $8,829.94 to Plaintiffs' Counsel, which is a thirty-percent fee, plus $996.61 in costs. ECF No. 27-1 at 15; ECF No. 27-3 ¶ 1(a)(iii). A 30% fee is within the range found reasonable by courts in this Circuit. See, e.g., Clarke v. Flik Int'l Corp., No. 17-1915, 2020 WL 747067, at *3 (D.N.J. Feb. 14, 2020) (approving 34% fee); Demmick v.

Cellco P'ship, No. 06-2163, 2015 WL 13646311, at *3 (D.N.J. May 1, 2015) ("The Third Circuit has noted with approval percentage-of-recovery attorneys' fee awards which range from as little as 19% of the recovery to as much as 45% of the recovery."); Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members, No. 08-235, 2019 WL 4877563, at *6 (D.N.J. Oct. 3, 2019) ("Courts in the Third Circuit, including this one, have viewed fee percentages of 33% as reasonable.") (collecting cases).

Courts permit the imposition of fees up to the percentage that plaintiffs agreed to in a contingency agreement with counsel. E.g., Payton-Fernandez, 2024 WL 5202421, at *10, n. 6 (authorizing 33.33% fees where contingency agreement authorized one third fees); Hudson, 2021 WL 406450, at *2 (finding fee reasonable where consistent with the contingency fee agreement). Ms. Pabey and Ms. Quantrill are the only two plaintiffs and both agreed to a 40% contingency fee or lodestar calculation of fees when they retained counsel. ECF No. 1 at 14; ECF No. 2-1 at 2. Thus, Plaintiffs are not prejudiced by the 30% fee, as they will retain more of the settlement funds than anticipated by their agreements.

When evaluating the reasonableness of fees, courts also consider the lodestar method to "cross-check" the reasonableness of the percentage method. See, e.g., Li, 2023 WL 4958105, at *5 (quoting Carroll, 2011 WL 5008361, at *8). Plaintiffs' counsel has spent approximately 59 hours litigating and settling this action, including investigating claims and pursuing discovery. ECF No. 27-1 at 15, ECF No. 27-2 at ¶ 7. Based on the hourly rates attested to in Counsel's supporting affidavit, ECF No. 27-2 at ¶¶ 7-8, Plaintiffs' Counsel's lodestar fee is $24,697.50. Id. ¶ 7. Thus, the fees sought are reasonable because the lodestar multiplier is less than one. Li, 2023 WL 4958105, at *5 (quoting Carroll, 2011 WL 5008361, at *8) ("'[a] lodestar multiple of less than

one reveals that the fee requested constitutes only a fraction of the work that the attorneys billed' and thus, is reasonable").

Thus, under both the percentage of recovery and lodestar methods, the fees are reasonable.

**e. Costs**

Finally, the Court notes that the costs sought in the settlement are likewise reasonable. "29 U.S.C. § 216(b) allows for the 'costs of the action' to be paid by the defendant in an FLSA case. Courts within the Third Circuit have approved costs including complaint filing fees, subpoena invoices, mileage and parking, mediation fees, and calling campaigns." Li, 2023 WL 4958105, at *6 (citing Keller v. TD Bank, N.A., No. 12-5054, 2014 WL 5591033, at *16 (E.D. Pa. Nov. 4, 2014)). Plaintiffs' counsel attests to $1,263.61 in costs. ECF No. 27-2 at ¶ 8. The Parties agree to reimbursement for $996.61 in litigation costs. ECF No. 27-1 at 16. This too is reasonable.

## III. Conclusion

For the reasons discussed above, the Court approves the FLSA settlement because it is a fair and reasonable resolution to a bona fide dispute and does not frustrate the purposes of the FLSA. Plaintiffs' request for attorneys' fees and expenses is also fair and reasonable. Thus, Plaintiffs' unopposed motion to approve the Settlement Agreement is **GRANTED.** The parties shall proceed with the administration of the settlement in accordance with the terms of the settlement agreement. This constitutes a final judgment, and the Clerk's Office is directed to **CLOSE** this case.

s/ Matthew J. Skahill
MATTHEW J. SKAHILL
United States Magistrate Judge